**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 16, 2009**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

JESUS S. MELENDEZ,

      Plaintiff-Appellant,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant-Appellee.

No. 09-3102
(D.C. No. 6:08-CV-01094-JTM)
(D. Kan.)

---

**ORDER AND JUDGMENT**[*]

---

Before **LUCERO**, **GORSUCH**, and **HOLMES**, Circuit Judges.

---

Jesus Melendez appeals from an order of the district court affirming the

decision by the Commissioner of the Social Security Administration

("Commissioner") denying his application for disability insurance benefits

("DIB"). Because substantial evidence supports the Commissioner's decision, we

affirm.

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Melendez filed his application for DIB in June 2004, alleging that he became permanently disabled on April 16, 2001. The Social Security Administration initially denied Melendez's application and came to the same conclusion on reconsideration. Melendez then received a hearing before an Administrative Law Judge ("ALJ") in February 2005. After the hearing, the ALJ issued a partially favorable decision in which she found Melendez disabled for a closed period beginning April 16, 2001, and ending November 10, 2002. The Appeals Council affirmed the ALJ's finding of disability for the April 2001 to November 2002 period, but remanded the case to the ALJ to issue a new decision on whether Melendez was disabled after November 10, 2002.

The ALJ held a second hearing in April 2007, and issued another partially favorable decision that extended the closed period through May 23, 2003. The ALJ determined, however, that Melendez was not "disabled" as defined in the Social Security Act after May 23, 2003. Based on his age, education, vocational profile, and residual functional capacity ("RFC") as evaluated by a vocational expert, she further determined that Melendez could perform light unskilled and sedentary work that existed in significant numbers in the national economy. He was therefore entitled to DIB for the closed period from April 16, 2001, to May 23, 2003, but not thereafter. The Appeals Council denied Melendez's request for review, and the district court affirmed the agency's decision. This appeal followed.

-2-

# I

Disability claims are reviewed using a five-step sequential evaluation process. See Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). At the first step, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. Williams, 844 F.2d at 750; §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he is not, the ALJ proceeds to step two and determines if the claimant's impairment is medically severe. Williams, 844 F.2d at 750; §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); see also 20 C.F.R.§ 404.1520(c) (defining a severe impairment). If it is, step three requires the ALJ to evaluate whether the claimant's impairment meets or equals one of the impairments listed in the Social Security regulations. Williams, 844 F.2d at 751; §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If a claimant can make a showing at step three that he meets or equals a listed impairment, then he is presumptively disabled and entitled to disability benefits. Williams, 844 F.2d at 751; §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant fails to make a showing at step three, then the ALJ proceeds to the next step to consider whether the claimant's impairment prevents him from performing his past relevant work. Williams, 844 F.2d at 751; §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his past relevant work, then the ALJ determines whether, nonetheless, a significant

number of jobs exist in the national economy that he is capable of performing. Williams, 844 F.2d at 751; §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

At the first step, the ALJ noted that Melendez had worked for brief periods in 2003, 2005, and 2006, but determined that these work periods did not constitute substantial gainful activity lasting for six months or more. At the second step, the ALJ determined that Melendez had a severe impairment: "status post anterior and posterior fusion of L4-S1 in April 2002 with complaints of back pain thereafter."

At the third step, the ALJ concluded that Melendez's impairment met or equaled Listing 1.04A from November 11, 2002, through May 23, 2003. See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. However, the ALJ determined that after this period Melendez did not have an impairment that met or equaled the severity of any listing. In reaching this conclusion, the ALJ summarized the facts supported by evidence submitted at the first hearing: Melendez injured his back at work in 2001; he had surgery on his back in April 2002; his doctor released him to work with some restrictions in May 2003; complaining of a fall from a truck and resulting hip injury, he was treated by his family doctor in May 2004; and, at the May 2004 visit, the doctor reviewed an x-ray of Melendez's back that showed the surgical repair was intact.

The ALJ noted that the May 2004 record was the last treatment note in the file, although Melendez was also seen twice in August 2004 for consultative

-4-

examinations at the direction of the state agency for the Social Security Administration. The ALJ further noted that the only new exhibits submitted since the 2005 hearing were records from the Allen County Hospital from June 2006 and an RFC questionnaire completed by Dr. Timothy Spears on June 22, 2006.[1] Based on this evidence, the ALJ concluded that Melendez had not received any medical treatment from May 2004 until June 2006 except for a prescription for hydrocodone, and she reasoned that these facts did not support Melendez's complaints of disabling pain.

The ALJ then indicated that she had reviewed all seven of the RFC assessments in the record. The ALJ noted that, although the RFC assessments varied, all of them indicated that Melendez could work full time, with the exception of the June 2006 RFC evaluation by Dr. Spears. The ALJ stated, however, that she gave little weight to Dr. Spears' evaluation because it was not supported by either substantial record evidence or the medical expert's testimony. Moreover, Dr. Spears examined Melendez only once.

The ALJ then discussed the testimony by the medical expert, Dr. Malcolm Brahms, a board certified orthopedic physician. Dr. Brahms stated that Melendez's impairment met Listing 1.04A from the date of injury, April 16, 2001,

_____

[1] The ALJ's decision states that the RFC questionnaire was completed on June 22, 2007. However, given the date on the questionnaire and the fact that the hearing took place in April 2007, we assume that the date provided by the ALJ was a simple clerical error.

until May 23, 2003. He testified that, after May 23, 2003, Melendez was able to perform light work, although he continued to suffer certain functional limitations.

Given all of these considerations, the ALJ found that, because his doctor released him to work, Melendez did not meet listing 1.04A after May 23, 2003—a finding supported by the medical expert's credible testimony. The ALJ further noted that Melendez did not contend his impairment met or equaled a listing during the relevant time period, and a claimant bears the burden of proof on this issue. The ALJ also found that Melendez's subjective complaints of pain and limitation during this period were not fully credible, and that medical evidence established a decrease in the signs and symptoms related to his impairment; this evidence demonstrated a medical improvement after May 23, 2003, which resulted in the end of his period of disability.

The Appeals Council denied review after the ALJ's second partially favorable decision; accordingly, that decision is the Commissioner's final decision for purposes of our review. See Doyal v. Barnhart, 331 F.3d 758, 759 (10th Cir. 2003).

**II**

"We review the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." Id. at 760. The only issue Melendez raises on appeal is whether the ALJ improperly determined at step three of the five-step

process that his impairment did not meet or equal Listing 1.04A after May 23, 2003.

Listing 1.04A requires a disorder of the spine resulting in compromise of a nerve root with:

> [e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. Melendez first argues that he has demonstrated that he meets Listing 1.04A because, although no examination found all the symptoms present at the same time, he exhibited symptoms meeting all of the criteria required by Listing 1.04A at various times from early 2001 to the present.

We reject this argument and hold that substantial evidence supports the ALJ's finding that Melendez's condition has not met Listing 1.04A since May 23, 2003. First, evidence of Melendez's symptoms from April 2001 through May 23, 2003, is not relevant because he was found to be disabled during that time. Second, after May 23, 2003, he no longer had a disorder of the spine covered by Listing 1.04A—a herniated disk—because it had been repaired by surgery in April 2002. The evidence shows that the surgery was successful: Subsequent x-rays showed the surgical repair was intact and that there was no nerve root

compression. In addition, one year after surgery, Melendez's back surgeon concluded that his condition had sufficiently improved such that he could return to work without restrictions. Other medical evidence supports the ALJ's finding; for example, the medical records show that Melendez does not suffer from motor weakness or sensory loss.

Although he does have some remaining symptoms of back pain and functional limitations, Melendez has not offered any objective medical evidence that brings the ALJ's conclusion into doubt. The ALJ found that Melendez's testimony about his pain and functional limitations was not entirely credible because he complained of conditions much more severe than were supported by medical evidence; Melendez does not challenge this credibility determination on appeal. Moreover, Melendez's failure to seek treatment for his back for three years further supports the ALJ's decision. Further, Melendez's argument relies heavily on Dr. Spears' functional evaluation, which the ALJ found to be entitled to little weight because it was a one-time examination that conflicted with substantial evidence in the record and the medical expert's testimony.

Finally, Melendez argues that, even if his impairment did not meet Listing 1.04A, it was equivalent in severity to the listing. Melendez contends that the ALJ erred by failing to discuss whether his impairment equaled the listed impairment. We disagree. First, the ALJ specifically found that, on or after May 24, 2003, Melendez did not have an impairment that met "or equal[ed] in severity

the clinical criteria of an impairment listed in Appendix 1, Subpart P." Further, when the ALJ asked Melendez's attorney at the hearing in April 2007 if Melendez was "contending his condition me[t] or medically equal[ed] any of the criteria contained in the listing of impairments[,]" the attorney responded "No, Your Honor." We discern no error where a claimant's counsel unambiguously concedes an issue before the ALJ. Cf. Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir. 1997) ("[A]n ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present claimant's case . . . .").

### III

Accordingly, we agree with the district court that substantial evidence supports the Commissioner's decision. The judgment of the district court is **AFFIRMED.**

Entered for the Court


Carlos F. Lucero
Circuit Judge